IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BURENA SMITH,

*Plaintiff,*

v.

LLOYD J. AUSTIN III,

*Defendant.*

Civil Action No. ELH-19-2572

**MEMORANDUM OPINION**

Burena Smith, the self-represented plaintiff and a civilian employee of the Department of Defense ("DOD"), commenced this employment discrimination action on September 5, 2019. ECF 1 (the "Complaint"). Ms. Smith sued Mark Esper, then the Secretary of Defense,[1] in his official capacity, alleging unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* ("Title VII"). In particular, plaintiff claims "Racial, Sex, And Color Discrimination" (Count One); hostile work environment (Count Two); and retaliation (Count Three). ECF 1 at 7-8. I shall refer to the defendant variously as the Department of Defense ("DOD"), the "Army," and the "government."

The alleged events that gave rise to the suit occurred primarily in 2013. Ms. Smith lodged a claim with the United States Equal Employment Opportunity. Her pursuit of administrative remedies yielded three decisions, all of which were adverse to plaintiff. This suit followed.

---

[1] On January 22, 2021, Lloyd J. Austin III was sworn in as Secretary of Defense. *About*, SECRETARY OF DEFENSE, https://www.defense.gov/Our-Story/Meet-the-Team/Secretary-of-Defense/. Therefore, Austin has been substituted as a defendant pursuant to Fed. R. Civ. P. 25(d).

On June 23, 2020, I dismissed the suit, without prejudice, for failure to effect service of process.  ECF 15.  Thereafter, plaintiff moved to reopen the suit, citing challenges posed by the COVID-19 pandemic and her status as a pro se litigant.  ECF 16.  Accordingly, I promptly reopened the case.  ECF 17.

Ms. Smith twice requested the appointment of counsel.  ECF 2; ECF 33.  In my rulings denying both requests (ECF 11; ECF 34), I explained that there are no exceptional circumstances that warranted appointment of counsel under 8 U.S.C. § 1915(e)(1).  *See Manship v. Trodden*, 273 F. App'x 247, 248 (4th Cir. 2008) (per curiam).  In particular, I noted that plaintiff does not appear to be indigent and she demonstrated the wherewithal to articulate the basis for her claims.  *See* ECF 34 at 2.

The DOD has filed a motion to dismiss or, in the alternative, for summary judgment.  ECF 29.  The motion is supported by a memorandum (ECF 29-1) (collectively, the "Motion"), and several exhibits.[2]  According to the defendant, plaintiff failed to file her suit within 90 days of receiving notification of the denial of her administrative claim, as required by 42 U.S.C. § 2000e-5(f).  Alternatively, defendant contends that plaintiff has not stated claims for hostile work environment or retaliation, nor has she stated a claim for disparate treatment.

Plaintiff requested two extensions of time to respond to the Motion, both of which I granted, at least in part.  ECF 32; ECF 34.  Plaintiff filed her opposition (ECF 35) two and a half months after the filing of the Motion, along with several exhibits.  The government replied.  ECF 38.

---

[2] At the time the Motion was filed, David Norquist was the Acting Secretary of the DOD. *See* ECF 29 at 1.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion.

## I.  Background[3]

### A.  Factual Background

Ms. Smith, a "Black, African-American" woman, has worked for DOD for fourteen years. ECF 1, ¶¶ 9, 10.  At the relevant times, she worked as an "Information Technology . . . Specialist" in the "Research, Development, and Engineering Command (RDECOM)," located at the Aberdeen Proving Ground.  *Id.* ¶¶ 1, 10.  In particular, it appears that she worked for the Department of the Army ("Army"), which is part of DOD.  ECF 29-1 at 3; ECF 29-2.[4]

The Complaint's "Statement of Facts" is divided into three sections that address different "claims" or events.  *Id.* at 3-7.  The factual allegations pertain mostly to events that took place in 2013, after Paul Brozovic became the "acting director" of RDECOM, *id.* ¶ 20, and plaintiff's "second level supervisor."  *Id.* ¶ 12.  However, the facts are not set forth chronologically.  I shall recite the facts in a manner generally consistent with the Complaint.

The Complaint "incorporates any and all information already alleged in [plaintiff's] EEO investigative file."  *Id.* ¶ 63; *see id.* ¶¶ 69, 73.  Presumably, "EEO" refers to equal employment opportunity. However, plaintiff did not explain the nature of her EEO investigative file, nor did she append any EEO exhibits to the Complaint.  In addition, the Complaint contains only one

---

[3] As discussed, *infra*, at this juncture I must "accept[] all well-pleaded allegations of the complaint as true and draw[] all reasonable inferences therefrom in favor of the plaintiff." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015); *see Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).  The Court may also consider documents attached to the Complaint or the Motion, "so long as they are integral to the complaint and authentic."  *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[4] As noted, plaintiff initially sued Mark Esper, then the Secretary of Defense.  She erroneously identified him as Secretary of the Department of the Army.  *See* ECF 1, ¶ 2.

vague allegation pertaining to retaliation. Specifically, plaintiff alleges that her "protected activities include[], but [are] not limited to, all of the instances so noted in Plaintiff's investigative EEO investigative file such as filing EEO complaints, and alleging discrimination, retaliation, and disparate treatment." *Id.* ¶ 75.

I also note that in the government's reply, filed May 20, 2021, the government mentioned, for the first time, in a footnote, that plaintiff has filed a "separate federal case" with similar allegations. *See* ECF 38 at 4 n.1. But, the government did not provide the case name or case number. As a result, the Court searched for the case, and determined that it is assigned to Judge Deborah Boardman. *See Smith v. Esper*, DLB-18-3844 ("*Smith I*").[5] That suit was filed in December 2018, about six months before suit was filed in this case. *Id.*, ECF 1. I discuss the import of *Smith I*, *infra*.[6]

### 1.

First, the Complaint addresses "Claim A. Work Station Movement." *Id.*at 3.

The Complaint implies that in January 2013, after Mr. Brozovic became acting director of RDECOM, he moved into an office adjacent to the one occupied by plaintiff. *See id.* ¶¶ 19-21. In February 2013, Mr. Brozovic "notified the union that he intended to direct [plaintiff] to move because of confidentiality concerns," noting that sound traveled freely between his office and plaintiff's. *Id.* ¶ 21.

---

[5] The case was initially assigned to Judge George Russell, III. In October 2020, it was assigned to then Magistrate Judge Boardman for all proceedings. *See Smith* I, ECF 46, ECF 47. Judge Boardman has since become a District Judge.

[6] If the Court had been made aware of *Smith I* in a timely manner, this case most likely would have been reassigned to the judge handling *Smith I*.

On March 18, 2013, Mr. Brozovic directed plaintiff "to move" her "desk" to a different office by March 29, 2013. *Id.* ¶ 23. Mr. Brozovic "stated that the purpose of the move was supervisor confidentiality and being overheard." *Id.* ¶ 25. However, "Marlene Herget, a white female," also occupied an office "adjacent to the one occupied by supervisors." *Id.* ¶ 26. Plaintiff seems to imply that Ms. Herget was not moved.

Further, plaintiff takes issue with the office to which she was moved, "Room 216B." *Id.* ¶ 23. For one, "[t]hree other offices with available space, all occupied by white males, were bypassed and [plaintiff] was placed in an office that seemed to segregate minorities from white occupants." *Id.* ¶ 24. In addition, the "move placed [her] in an open area with non-IA personnel." *Id.* In the Complaint, "IA" refers to "Information Assurance." *Id.* ¶ 18. The Complaint implies that plaintiff was a member of the IA team. *See id.* According to plaintiff, a change in office presented "serious Privacy Act, sensitivity, and operational security concerns." *Id.* ¶ 27.

Over the following weeks, Ms. Smith "sent correspondence to [her] chain of command . . . strenuously objecting to the move . . . ." *Id.* She wrote to Mr. Brozovic's apparent superiors, including Colonel Kenneth Tarcza, "RDECOM Chief of Staff." *Id.* ¶ 14; *see id.* ¶¶ 27, 31. Mr. Brozovic twice admonished plaintiff for doing so and threatened to discipline her. *Id.* ¶¶ 29, 31.

The section of the Complaint concerning the work station move ends with the following line: "[Were there any tangible impacts of having moved?]" *Id.* ¶ 32.

**2.**

The second section of the Complaint's narrative is titled "Claim B: Denial of Temporary Promotion to IT Specialist GS-2210-13." *Id.* at 4.

As of the "Fall of 2012," Ms. Smith was the "sole [remaining] member of the Information Assurance team." *Id.* ¶ 33. She was "placed on orders as Acting IAM by Dr. Nathaniel Buchheit,"

whose position is not specified.  *Id.* ¶ 34.  "IAM" refers to "Information Assurance Manager."  *Id.* ¶ 36.

In January of 2013, plaintiff submitted a request to Colonel Tarcza for a "temporary promotion to GS-2210 13 and consideration for permanent promotion to GS-2210-13 as the . . . [IAM] . . . or management reassignment to the 13/14 IAPM position."  *Id.*The Colonel promptly responded, requested "supporting information," and indicated that the request would be handled by "the workforce management office."  *Id.* ¶ 37.  In late March 2013, plaintiff provided Colonel Tarcza with the requested documentation.  *Id.* ¶ 39.  However, Colonel Tarcza redirected plaintiff to Mr. Brozovic, "mildly implying [that plaintiff] had erroneously by passed [sic] the chain of command."  *Id.* ¶ 40.  In late April 2013, Mr. Brozovic told plaintiff "to make an appointment with a Human Resources point of contact regarding her promotion."  *Id.* ¶ 42.

During the ensuing "few months," plaintiff received "varying, contradictory instructions regarding the . . . overall process."  *Id.* ¶ 43.  She asserts: "I provided all items for the desk audit but the Privacy Officer documents despite being swamped as the sole individual in a four-person office."  *Id.* ¶ 44 [sic].

### 3.

Last, plaintiff alleges facts pertaining to "Claims C and D. Work Schedule Change Denial and Leave Restriction."  *Id.* at 6.

In August 2011, Ms. Smith was involved in "a serious car accident" that resulted in "significant injuries."  *Id.* ¶ 45.  In the fall of 2011, she arranged with her supervisor at the time for a flexible work schedule, under which she was permitted to arrive at work up to one hour after the "official start time" of 8:30 a.m.  *Id.* ¶ 46.  But, plaintiff was also required to take sick leave for any time missed after 8:30 a.m.  *Id.* She abided by this agreement.  *Id.* ¶ 47.

However, in early February 2013, plaintiff "requested . . . to . . . get onto a regular work schedule [to] refrain from using [her] sick leave." *Id.* ¶ 49.  It seems that plaintiff desired formal approval of a flexible or alternative work schedule.  *See id.* ¶¶ 49, 54.  She alleges that "others were allowed" such schedules, including an "Asian female." *Id.* ¶ 54.  Further, "White male employees were allowed to . . . come in to work late without repercussions." *Id.* ¶ 56.

Mr. Brozovic promptly requested medical documentation for the request. *Id.* ¶ 50. Plaintiff informed Mr. Brozovic that she would obtain "a general statement" from her doctor. *Id.* ¶ 51.  According to the Complaint, plaintiff "had provided medical documentation regarding her accident and injuries" in 2011. *Id.* ¶ 52.

Mr. Brozovic denied plaintiff's request, "citing safety concerns." *Id.* ¶ 53.  And, he "noted that because he did not have the medical information on file, he would no longer approve sick leave and that failure to report to work on time could result in disciplinary action and Absence Without Leave (AWOL)." *Id.* Mr. Brozovic also "stated that the Family Leave Medical Act (FLMA) was an option for [plaintiff]." *Id.* Apparently alluding to one of the subsequent administrative proceedings, plaintiff alleges: "At the fact-finding, [Mr. Brozovic] stated that the reason he denied [plaintiff's] request . . .  was because [plaintiff] was his only IA person and there would be 30 minutes without coverage." *Id.* ¶ 55.

At about the same time, plaintiff "received an FMLA authorization . . . ." *Id.* ¶ 57.  Mr. Brozovic again requested documentation. *Id.* ¶ 58.  However, he requested an "excessive" and "unreasonable" level of detail. *Id.* ¶ 59.  "Dr. Linder and Dr. Conner," whose identities are not explained, supposedly characterized the "level of requested detail [as] 'crazy.'" *Id.*

In April 2013, Mr. Brozovic "issued [plaintiff] a leave restriction that was of the most severe variety." *Id.* ¶ 60.  Plaintiff notes that in her "thirty-year career, she had never had any issues regarding abuse of sick leave." *Id.* ¶ 61.

## B.  Administrative Proceedings

Ms. Smith filed an equal employment opportunity complaint with the EEO office at the Aberdeen Proving Ground on June 8, 2013, although a copy of the complaint has not been provided.  *See* ECF 29-2 at 1.  The matter proceeded to the Equal Employment Opportunity Commission ("EEOC"), and the administrative judge ("AJ") ruled in the government's favor on August 15, 2017.  ECF 29-2 at 7 ("Order Entering Judgement [sic]"); *id.* at 8-16 (decision of the AJ).  It appears that plaintiff was represented by counsel.  *See id.* at 22.

The AJ analyzed whether the government engaged in disparate treatment or subjected plaintiff to a hostile work environment or unlawful retaliation, in violation of Title VII.  *See id.* at 9.  The AJ determined that plaintiff did not establish a prima facie case of disparate treatment, on any basis, because her complaint did not identify any similarly situated individuals.  *See id.* at 14.  Moreover, the AJ reasoned that even if plaintiff had done so, the government nonetheless showed that "there were legitimate nondiscriminatory reasons" for its actions.  *Id.*  In particular, the AJ found that Mr. Brozovic's decision in April 2013 not to award plaintiff a temporary promotion was "based on a desk audit" as well as the "consensus" of "several individuals" that the promotion was not warranted.  *Id.*

In that proceeding, as in her Complaint, plaintiff also appeared to tie her hostile work environment claim to her allegations regarding the office relocation, the denial of her request for a new work schedule, and the restriction on her ability to take sick leave, imposed by Mr. Brozovic.

See *id.* at 15.  The AJ found that each of the actions about which plaintiff complained was taken pursuant to "Agency policy."  In particular, the AJ explained, *id.*:

> The Notice of Leave Restriction was issued because Complainant would continually use sick leave retrospectively after arriving late to work.  The new office location was for the legitimate purpose of 'supervisory confidentiality.'  The work hour reassignment denial was because Complainant was required to work core hours.

Thus, the government persuaded the AJ that it had legitimate, nondiscriminatory reasons for its actions.  *See id.*  And, plaintiff did not establish that those reasons were pretextual.  *See id.*

As for retaliation, the AJ ruled that plaintiff did not make out a prima facie case of "reprisal discrimination."  *Id.* The AJ's decision makes clear that the only protected activity in which plaintiff engaged was the filing of the claims at issue, and that all of the alleged misconduct underlying her claims preceded that filing.  *See id.*  Moreover, the alleged retaliatory activities did not rise to the level of unlawful misconduct.  *See id.*

On October 10, 2017, two months after the AJ issued his decision, the Army issued its Final Agency Decision, informing plaintiff's lawyer of the Army's decision "to implement" the ruling of the AJ.  ECF 29-2 at 1-5.  The decision, which was signed by the Acting Director of the Army's "Equal Employment Opportunity Compliance and Complaints Review," indicated that the decision followed an "evaluation" of plaintiff's claims.  *Id.* at 2.  It also informed plaintiff of her right to appeal the decision to the EEOC's Office of Federal Operations ("OFO"), due within 30 calendar days from receipt of the Army's decision.  *Id.* at 2-3.  Alternatively, plaintiff was advised of her right to file suit within 90 calendar days from receipt of the Army's decision.  *Id.* at 3-4.

It appears that plaintiff filed an appeal with the OFO, because on May 31, 2019, the OFO issued a comprehensive decision affirming the decision of the AJ.  ECF 29-3.  The OFO's decision described all of plaintiff's contentions, *id.* at 5, which echo many of the allegations and claims in her suit.  And, the OFO explained how the government's evidence undermined or rebutted all of

9

plaintiff's contentions. *See id.* at 6-8. In particular, the OFO concluded that the government had legitimate, non-discriminatory, and non-pretextual reasons for the office relocation, leave restriction, denial of a temporary promotion, and denial of a flexible work schedule. *See id.*

Of relevance here, the OFO's decision also addressed plaintiff's right to file a civil suit. It stated: "You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date you receive this decision." *Id.* at 9 (emphasis in original). According to the Complaint, plaintiff received the OFO's decision on June 5, 2019. ECF 1, ¶ 5. Therefore, plaintiff had 90 days from receipt of the notice to file suit. Thus, the deadline was Tuesday, September 3, 2019. However, plaintiff filed suit on Thursday, September 5, 2019. ECF 1.

## II. Legal Standard

### A.

As noted, the government's Motion is styled as a motion to dismiss or, in the alternative, for summary judgment. A motion styled in the alternative implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

In general, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and

submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[7]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C Wright & Miller, Federal Practice & Procedure § 1366 (3d ed. 2018). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). As the Fourth Circuit has said, when a district judge rules on a summary judgment motion prior to discovery, it is akin to "for[cing] the non-moving party into a fencing match without a sword or mask." *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th

---

[7] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

Cir. 2014); *see Goodman v. Diggs*, 986 F.3d 493, 500-501 (4th Cir. 2021); *accord Putney v. Likin*, 656 F. App'x 632, 639 (4th Cir. 2016) (per curiam).

However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"To justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc*., 514 F. App'x 378 (4th Cir. 2013) (per curiam). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874 (4th Cir. 2019); *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008) (per curiam), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Ms. Smith has not filed an affidavit under Rule 56(d). Nor does she suggest that she would be prejudiced without additional discovery. In fact, she submitted three affidavits, all signed in 2017, in support of her opposition. ECF 35-1 to ECF 35-3.

Nevertheless, I shall construe the Motion as one to dismiss for multiple reasons. For one, I am mindful that plaintiff is self-represented. Second, I may still consider various exhibits, as explained, *infra*. Most important, for reasons set forth below, my resolution of the Motion would be the same regardless of whether I construed it under Rule 12(b)(6) or Rule 56.

13

**B.**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Services Bd.,* 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young,* 569 U.S. 221 (2013); *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  The rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir.

14

2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.,* 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and...recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co*., 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); see *Semenova v. Md. Transit Admin*., 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc*., 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cty*., 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the

pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In deciding a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.' " *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis in *Goodman*) (citation omitted).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th

16

Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167.  Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.*  Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).  To be "integral," a document must

be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) ) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

The Motion is supported by multiple exhibits. ECF 29-2 contains the 2017 decision of the AJ and the subsequent decision of Army, implementing the AJ's decision. The OFO's 2019 decision is docketed at ECF 29-3. ECF 29-4 contains the February 2015 "Position Review/Deposition," *i.e.*, the "Desk Audit," conducted by an Army "HR Specialist," which assesses plaintiff's eligibility for the promotion she requested. All of these materials are incorporated into the Complaint, given that the Complaint explicitly references the OFO's decision (ECF 1, ¶ 5) and "incorporates any and all information . . . in [plaintiff's] EEO investigative file." *Id.* ¶ 63; *see id.* ¶¶ 69, 73. Therefore, I may consider them. Nevertheless, I do not rely on them in my analysis, *infra*.

In contrast, the affidavits submitted by plaintiff, from an officer of her union's local (ECF 35-1) and colleagues in the Army (ECF 35-2; ECF 35-3), are not integral to the Complaint. Therefore, I may not consider them. However, even if considered, the affidavits would not affect my ruling on the Motion, as discussed, *infra*.

Notably, I may "take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x. 200 (4th Cir. 2016); *see* Fed. R. Evid. 201(b)(2); *see also Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n. 1 (4th Cir. 1990) (holding that a district court may "properly

take judicial notice of its own records"); *Schultz v. Braga*, 290 F.Supp.2d 637, 651 n. 8 (D. Md. 2003) (taking judicial notice of dockets in state proceedings).  Therefore, I may take judicial notice of *Smith I*, a case filed in the District of Maryland.

### III.  Discussion

The government urges the Court to dismiss the suit, claiming it was not timely filed.  *See* ECF 29-1 at 7-8.[8]

Title VII, on which plaintiff's claims are founded, requires a plaintiff to file within 90 days of receipt of a right-to-sue notice from the EEOC.  *See* 42 U.S.C. § 2000e-5.  Ordinarily, the 90-day period begins to run on the date that a claimant receives the notice.  *See Davis v. Va. Commonwealth Univ.*, 180 F.3d 626, 628 (4th Cir. 1999); *Harvey v. City of New Police Dep't*, 813 F.2d 652, 653 (4th Cir. 1987); *Strothers v. City of Laurel, Md.*, 118 F. Supp. 3d 852, 860 (D. Md. 2015).  "A claimant who fails to file a complaint within the ninety-day statutory time period mandated by Title VII generally forfeits [her] right to pursue [her] claims."  *Mann v. Standard Motor Prod., Inc.*, 532 F. App'x 417, 418 (4th Cir. 2013).

"The 90-day filing requirement is 'not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'"  *Laber v. Harvey*, 438 F.3d 404, 429 n.25 (4th Cir. 2006) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)); *see Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) (finding Title VII plaintiff's failure to file suit within 90 days did not warrant equitable tolling); *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 321 (4th Cir. 2011)

---

[8] Defendant seems to assert its timeliness argument under both Fed. R. Civ. P. 12(b)(1), which concerns subject matter jurisdiction, and Rule 12(b)(6).  *See* ECF 29-1 at 4-5, 7-8.  However, as discussed, a plaintiff's tardy filing does not implicate subject matter jurisdiction.

(affirming application of equitable tolling to statute with 90-day filing requirement similar to that of Title VII).

Equitable tolling is a rare remedy that "allow[s] for exceptions to the strict enforcement of deadlines" and "restore[s] a claimant's right to review even though she otherwise would be time-barred." *Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222, 226 (4th Cir. 2005). A litigant is entitled to equitable tolling if: (1) she "'pursu[ed] his rights diligently,'" and (2) "'some extraordinary circumstance stood in [her] way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 256 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)) (alteration by this Court); *see Edmonson v. Eagle National Bank*, 922 F.3d 535, 548 (4th Cir. 2019); *Battle v. Ledford*, 912 F.3d 708, 718 (4th Cir. 2019). But, as the Fourth Circuit has stated, equitable tolling is available only in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)); *see Irwin v. Dep't of Veteran's Affairs*, 498 U.S. 89, 96 (1990) (noting that the doctrine of equitable tolling is to be applied "sparingly"); *Hutchinson*, 209 F.3d at 330 (noting that equitable tolling "must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes").

Courts in this Circuit generally apply equitable tolling in a narrow set of situations, including: (1) "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," *Gayle*, 401 F.3d at 226 (internal quotation marks omitted); (2) "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the limitations period," *id.* (internal quotation marks omitted); or (3) where

"extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Hutchinson*, 209 F.3d at 330.

In the Fourth Circuit, the "settled general rule" is that "the burden of proving an affirmative defense is on the party asserting it." *McNeill v. Polk*, 476 F.3d 206, 220 n.3 (4th Cir. 2007). However, a "plaintiff bears the burden of establishing the timeliness of the filing of her complaint whe[n] it is contested by the defendant." *Cepada v. Board of Education of Baltimore County*, WDQ-10-0537, 2010 WL 3824221, at *3 (D. Md. Sept. 27, 2010); *see also Darden v. Cardinal Travel Center*, 493 F. Supp. 2d 773, 776 (W.D. Va. 2007).

As indicated, plaintiff received the OFO's decision on June 5, 2019.  ECF 1, ¶ 5.  Counting from June 6, 2019, the ensuing 90th day fell on Tuesday, September 3, 2019.  But, suit was not filed until September 5, 2019.  ECF 1.  And, in the government's view, the Complaint does not suggest any basis for equitable tolling.  *See* ECF 29-1 at 8.  Therefore, the government contends that the suit must be dismissed as untimely.

Plaintiff acknowledges that she "was made aware of the importance of timeliness."  ECF 35 at 2.  But, she asserts that she "had questions" about whether the 90 days "was based on calendar days or business days."  *Id.*  Accordingly, plaintiff claims that she "made multiple inquiries among OFO, Clerk's Office, former legal counsel, Harford County Helpline and 5 Sep was determined to be the suspense date."  *Id.* It is unclear from this account whether anyone specifically advised plaintiff that the ninety-day period expired on September 5, 2019, or alternatively, whether plaintiff arrived at the determination through her own surmise.  In any event, plaintiff insists that she acted diligently and requests "the leniency of the court."  *Id.*

Plaintiff's claim of confusion is belied by the record.  The right-to-sue notice enclosed with the OFO's decision clearly stated that plaintiff had a right to file a civil action "**within ninety (90)**

21

**calendar days**" from the date of receipt of the notice.  ECF 29-3 at 9 (emphasis in original).

Accordingly, plaintiff's supposed confusion regarding how to calculate the 90-day period — and

in particular, whether it "was based on calendar days" or business days (ECF 35 at 2) — was either

unfounded or unreasonable, or both.  Moreover, plaintiff's vague description of the information

she received from various "trusted sources" does not clearly indicate that she was misled or

misinformed.  As such, this "is not a case in which" equitable tolling is warranted because plaintiff

"received inadequate notice . . . or . . . a motion for appointment of counsel is pending . . . or . . .

the court has led the plaintiff to believe that she had done everything required of her," or because

of "affirmative misconduct on the part of a defendant."  *Baldwin County Welcome Center*, 466

U.S. at 151.  Rather, plaintiff "fail[ed] to act diligently."  *Id.*

It is also noteworthy that although plaintiff is self-represented, she is no stranger to

litigation: plaintiff has another federal suit against the DOD, pending before Judge Boardman.  *See*

*Smith I*.

*Smith I* was filed in December 2018, six months before suit was filed in this case, asserting

claims of disparate treatment, hostile work environment, and retaliation under Title VII.  *See Smith*

*I*, ECF 1.  It also involved a timeliness dispute.  There, the government contended in a motion to

dismiss that after plaintiff filed a charge of discrimination with the EEOC, she received a "Notice

of Right to File a Formal Complaint advising the complainant of her responsibility to file a formal

complaint [with the EEOC] within fifteen days of receipt of the notice."  *Smith v. Esper*, GLR-18-

3844, 2020 WL 5798085, at *5 (D. Md. Sept. 29, 2020).  Like the right-to-sue notice at issue here,

the fifteen-day notice in *Smith I* explicitly stated that Ms. Smith had "'**15 calendar days**'" to file

a formal administrative complaint.  ECF 18-cv-3844-DLB, ECF 14-1 at 13 (quoting the notice;

emphasis in the notice).

In *Smith I*, the dispute regarding timeliness turned on when plaintiff actually received the pertinent notice, not equitable tolling. *See Smith*, 2020 WL 5798085, at *5-6. In contrast, the date on which plaintiff received a copy of the OFO's decision and the accompanying right-to-sue notice is undisputed. But, for present purposes, *Smith I* is testament to the fact that plaintiff had previously encountered a notice issued by the EEOC informing her of her right to take legal action within a particular number of *calendar days.*

To be sure, plaintiff received the right-to-sue notice in this case before the court ruled on the motion in *Smith I*. Nevertheless, it is notable that in *Smith I* plaintiff did not contend that she had difficulty understanding the reference to "calendar days" in the notice at issue. It is curious, then, that she now claims to have been confused by the same phrase in the notice at issue here.

Moreover, the pendency of *Smith I* indicates that plaintiff will not be prejudiced by the enforcement of the 90-day filing rule here. Some of the allegations in *Smith I* arise from the same nucleus of operative facts that are pertinent here. In other words, some of the facts in *Smith I* overlap with the allegations here, including those concerning the denial of plaintiff's request for a temporary promotion. *See id.* And, in *Smith I* plaintiff asserted claims of disparate treatment, hostile work environment, and retaliation, as she does here. *See Smith*, 2020 WL 5798085, at *3.[9]

---

[9] In light of the commonality of facts, this case may be barred by the rule against claim splitting. "The rule against claim splitting 'prohibits a plaintiff from prosecuting [her] case piecemeal and requires that all claims arising out of a single wrong be presented in one action.'" *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 635 (4th Cir. 2015) (quoting *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 Fed. App'x. 256, 265 (4th Cir. 2008)). To put it succinctly, a plaintiff does not get two bites at the apple.

To be sure, plaintiff had not received the OFO's decision by December 2018, when she filed suit in *Smith I*. But, plaintiff could have sought to amend her suit in *Smith I* after receipt of the OFO's decision.

In any event, the parties have not addressed this issue. Therefore, it is not the basis of my disposition.

Plaintiff was self-represented at the time she filed suit in *Smith I*, but subsequently retained

counsel. *See id.* at *5 n.3.

More generally, judges in this district have reiterated that a plaintiff's *pro se* status does

not, on its own, trigger equitable tolling. In *Clark v. Saval*, DLB-19-3519, 2020 WL 7640819, at

*8 (D. Md. Dec. 23, 2020), the court explained:

> "The fact that a plaintiff is self-represented is not an independent ground for
> equitable tolling, since a plaintiff does not need an attorney to file a lawsuit in
> federal court." *Deabreu v. United Parcel Serv., Inc.*, TDC-18-1433, 2018 WL
> 6329316, at *5 (D. Md. Dec. 3, 2018). . . . Indeed, "[c]ourts strictly enforce the
> ninety day filing requirement, even if the plaintiff is *pro se*." *Moulden v.
> Tangherlini*, RDB-14-3506, 2015 WL 8757609, at *2 (D. Md. Dec. 15, 2015).

*See also Newman v. Maryland Oncology Hematology, P.A.*, SAG-19-3667, 2020 WL 6044296, at

*1 (D. Md. Oct. 9, 2020) ("Given the uncontroverted evidence that [the self-represented] Plaintiff

was made aware of the correct filing deadline, there is simply no basis for equitable tolling . . . .").

The Fourth Circuit has ruled that filing only one day after the 90-day deadline may be

grounds for dismissal, even where the plaintiff was self-represented. *See Harvey*, 813 F.2d 652

(dismissing suit because it was filed one day late and there were no grounds for equitable tolling,

and noting that the *pro se* plaintiff had 84 days to file suit after learning of the receipt of the right-

to-sue notice from his wife); *see also Nguyen v. Inova Alexandria Hosp.*, 187 F.3d 630, 999 WL

556446, at *4 (4th Cir. 1999) (unpublished, per curiam) (concluding that the *pro se* plaintiff "had

ample opportunity to file a complaint once she was in actual receipt of the EEOC letter," which

was ten days after the 90-day limitations clock began to run); *Watts-Means v. Prince George's

Fam. Crisis Ctr.*, 7 F.3d 40, 42 (4th Cir. 1993) (reasoning that equitable tolling was inapplicable

where the plaintiff retrieved the right-to-sue notice from the post office five days after its arrival,

thus leaving him 85 to file suit); *Dixon v. Digital Equip. Corp.*, 976 F.2d 725, 1992 WL 245867

(4th Cir. 1992) (per curiam, unpublished) (dismissing suit and rejecting equitable tolling where *pro se* plaintiff filed suit one day late).

Under all of the circumstances, and consistent with the above decisions, I discern no basis for equitable tolling in this case.  In addition, I am mindful that plaintiff has filed a related suit, which arises, at least in part, from the same nucleus of operative facts.  And, that related suit is pending before another judge in this district.  Accordingly, this suit is subject to dismissal.  *See Mann*, 532 F. App'x at 418.

Given my conclusion as to this issue, I need not address the government's other arguments.

## IV.  Conclusion

For the foregoing reasons, I shall grant the Motion (ECF 29) and dismiss the suit.

An Order follows.


Date: August 5, 2021                                      _____/s/_____
                                                         Ellen Lipton Hollander
                                                         United States District Judge